JS 44 (Rev. 12/12) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| COLLEEN DOYLE | LATRICRETE INTERNATIONAL, INC. |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
AXELROD & ASSOCIATES, LLC, 8 LUNAR DRIVE, WOODBRIDGE, CT 06525, TELEPHONE: 203-389-6526

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 Section 2000 et seq
Brief description of cause:
Sexual Harrassment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
500,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 7/9/15

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COLLEEN DOYLE, | : | CIVIL ACTION NO. _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LATRICRETE INTERNATIONAL, INC. | : | JULY 9, 2015 |
| Defendant | : | |

## COMPLAINT

1.      This action  arises under Title VII of the Civil Rights Act of 1964 , as amended, codified at 42 § 2000 *et seq.,* the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 *et.seq.,* and Connecticut State law.

2.      This jurisdiction of this Court is founded upon 28 U.S.C. § 1331 (federal question).

3.      Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391 (b) in that the claims arose in this district and Plaintiff resides in this district.

4.      Supplemental jurisdiction over Plaintiff's state law claims is invoked pursuant to 42 U.S.C. § 1367 as the claims arise out of the same transactions and occurrences as the Plaintiff's federal claims.

5.      Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. § 1998.

6.      Plaintiff filed a timely claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO").

7.      Plaintiff filed a timely claim with the Equal Employment Opportunity Commission ("EEOC").

8.      The CHRO issued a Release of Jurisdiction to Plaintiff on May 20, 2015.

9.     The EEOC issued a Notice of Right to Sue on July 6, 2015.

## THE PLAINTIFF

10.     The Plaintiff, Colleen Doyle ("Doyle"), resides in New Milford, Connecticut.

## THE DEFENDANT

11.     The Defendant, Laticrete International, Inc. ("Laticrete" or "Defendant") is a corporation that maintains a principal place of business at 1 Laticrete Park North, Bethany, Connecticut.

## THE FACTS

12.     Plaintiff was hired by Laticrete on October 23, 2006 as an Executive Assistant.

13.     During the course of Plaintiff's employment, she was promoted into the positions of Materials Manager, and Purchasing Manager.

14.     Plaintiff received outstanding performance evaluations throughout her employment.

15.     Plaintiff's job responsibilities entailed purchasing, working with the Vice President ("VP") of Operations, Mr. James Bouldin ("Bouldin"), to assure major supplier relationships leveraged, supporting production, engineering, finance, marketing and new product development, and rendering procurement support to new products from inception to product launch, among many others.

16.     At all times relevant, Bouldin, was Plaintiff's immediate supervisor.

17.     In early 2012, Bouldin promised Plaintiff that she would be promoted into the position of Director of Procurement.

18.     Bouldin further promised Plaintiff that she would receive the required training in order to have the requisite skills for the Director of Procurement position.

19.    Bouldin requested Plaintiff to work on a "special project" in 2012.  Due to the additional work load, the required training was delayed in 2012, and plaintiff received a monetary increase in the amount of 15% increase (same amount employees receive when promoted), and again promised the Director position and the required training for the director position once special project was complete.

20.    In preparation of acquiring the Director of Procurement position, Bouldin promised, Plaintiff began consulting with an outside organizational psychologist, who the Defendant retains, whose purpose is to maximize the potential of managerial level personnel and groom selected employees into managerial and leadership roles.

21.    Plaintiff met with the Defendant's outside organizational psychologist in furtherance of fulfilling the Director of Procurement position she had been promised.

22.    Plaintiff questioned Bouldin on several occasions in the beginning of 2013 about the Director of Procurement position and the required training he needed to provide; Bouldin became agitated when questioned about the training and stated he was too busy.

23.    In April 2013, Bouldin began to frequently make inappropriate and offensive comments towards Plaintiff.

24.    On multiple occasions, Bouldin called Plaintiff a "bitch" and an "asshole."

25.    Bouldin also falsely stated that none of Defendant's other employees wanted to work with her.

26.    Bouldin told Plaintiff that if she "crossed him," "went behind his back," or "over his head" to his boss, she would no longer be employed at Laticrete.

27.   In June, 2013, Plaintiff attended an offsite plant managers' meeting in North Carolina.

28.   At the June 2013 meeting, Bouldin showed a slide show which partially contained slides of nude women.

29.   Bouldin made inappropriate sexually derogatory comments about the nude women on the slides such as "Guys, check out these tits!" referring to the women's nude body on the slides.

30.   During the June 2013 meeting, Bouldin also repeatedly stated that he wanted to have a "panty raid," and attempted to enter female bedrooms, until he was yelled at to stop by a female employee attending the meeting and was restrained by male employees.

31.   That night, Plaintiff could not sleep out of fear and anxiety over Bouldin's comments and actions.

32.   While at the June 2013 meeting, Plaintiff informed Ms. Janet Brunwin ("Brunwin"), Director of Finance and Human Resources ("HR"), that she was concerned over the recent display of sexually inappropriate and offensive behavior by Bouldin, at the June 2013 meeting.

33.   Brunwin told Plaintiff she would get back to her in regard to her complaints about Bouldin.

34.   A few weeks later, in a follow up to Plaintiff and Brunwin's discussion in North Carolina, Brunwin came to Plaintiff's office in Connecticut and asked her if Bouldin's inappropriate and offensive behavior changed - Plaintiff responded that she did not notice any changes in Bouldin's behavior.

35.     Brunwin also informed Plaintiff that she spoke to the organizational psychologist
        Latricete consults with, in regard to the conduct of Bouldin.

**Plaintiff Experiences Retaliation Following the Her Complaint of Bouldin's**
**Sexually Inappropriate Conduct**

36.     After Plaintiff complained to Brunwin about Bouldin's sexually inappropriate and
        offensive behavior, his hostility and offensive behavior increased towards her.

37.     Bouldin and Plaintiff had meetings on October 11th and 18th of 2013.   At the
        meetings, Plaintiff again inquired about the Director of Procurement position, she was
        previously promised by Bouldin and further inquired about the training Bouldin
        promised her.

38.     Bouldin became extremely agitated and threatened to eliminate her current position as
        Purchasing Manager.

39.     Bouldin further stated that Plaintiff was not going to be provided the opportunity to
        obtain the position of Director of Procurement he had promised her, and that he
        would rather give the position to anyone other than Plaintiff.

**Plaintiff Files Formal Harassment Complaint Against Bouldin with Human**
**Resources and Harassment Increases**

40.     On or about October 22, 2013, Plaintiff filed a formal sexual harassment Complaint
        against Bouldin, with Human Resources ("HR").

41.     In the October 22nd harassment  complaint to HR, Plaintiff complained, *inter alia*,
        that:

        i.   On April 1st and May 17th of 2013, Bouldin called her a "bitch" and that
             she was the equivalent of the "male asshole.";

        ii.  That she was subjected to inappropriate behavior at the offsite plant
             manager's meeting in June 2013 and that Bouldin was persistent about
             going into the female bedrooms and made numerous comments about

     having a "panty raid," throughout the evening, which made everyone, including Plaintiff, very uncomfortable;

   iii.  That Bouldin subjected Plaintiff, and other employees, to a slide show at the June 2013 meeting, which partially contained nude women;

   iv.  Bouldin made sexually inappropriate, offensive, and unwanted comments about female breasts, during the slide show;

   v.  She complained that Bouldin had recently become more hostile towards her and was discriminating and retaliating against her; and

   vi.  She felt Bouldin was retaliating against her for complaining about his offensive conduct to HR.

42.    A few weeks later, on November 6, 2013, Plaintiff met with Laura Brown "(Brown)", VP of Human Resources.

43.    On November 6th, Plaintiff complained to Brown about Bouldin's sexually inappropriate and offensive conduct, including, but not limited to, calling Plaintiff a "bitch" and "asshole," on multiple occasions.

44.    Plaintiff also informed HR about Mr. Bouldin's retaliation, in which he first promised Plaintiff she would be promoted into the Director of Procurement position –then after she complained to HR – he took a direction opposite to what he promised and stated he would rather give the Director of Procurement position to anyone other than Plaintiff.

45.    Subsequently, Plaintiff had another meeting with Brown.  At that meeting, Brown made excuses for Bouldin's behavior, alluding to the fact that Plaintiff misunderstood the situation and stated,  "[w]e are all family," clearly implying that because everyone is "family,"  Bouldin's behavior is in some way acceptable.

46. Following Plaintiff's meeting with Brown, her leadership and development training with Laticrete's organizational psychologist was abruptly discontinued, who Plaintiff had been meeting with in furtherance of fulfilling the Director of Procurement position she had been promised by Bouldin.

47. Two weeks later, after the filing of her formal HR Complaint, all of Laticrete's Managers were required to take a "Sexual Harassment Prevention" training course.

48. Despite the foregoing sexual harassment training, Bouldin's offensive conduct continued - in April 2014, at a staff meeting, Bouldin, began a conversation about an "erotic bakery" he liked that baked "penis cakes" and "titty cakes."

49. Bouldin, as he was discussing the "erotic bakery," looked directly at Plaintiff and said - "[d]oesn't that make you hungry?"

50. During the April, 2014 staff meeting, during a discussion about obtaining services provided by Goodwill Industries, Bouldin made another personally offensive comment and stated, "let's hire the handicap, because they are fun to watch."

51. Again, looking at Plaintiff, he stated, "I probably shouldn't have said that?" Bouldin was fully aware, that Plaintiff has a handicapped nephew and this statement was an intentional and vicious attack on all handicapped people and was personally extremely upsetting to Plaintiff.

52. After the appalling statements made to Plaintiff about the "erotic cakes" on April 17th and the handicap comment, Plaintiff sent an email to the VP of Human Resources, Ms. Brown.

53. Plaintiff's April 17th email indicated that she wanted to discuss additional concerns regarding her harassment complaint filed against Bouldin on October 22nd, and to

discuss recent statements Bouldin made about the "erotic bakery" and the handicapped - the meeting never occurred.

54.   In May 2014, Bouldin hired Scott Gustavson ("Gustavson"), for the position Plaintiff had been promised, as the new Director of Procurement, congruent with Bouldin's statement that he would hire someone else and not give Plaintiff the position, despite his earlier promises and actions in 2012.

55.   In the first weeks of Gustavson's employment, reporting directly to Bouldin, he stated to Plaintiff that she did not like managing people (which was completely opposite of the truth).

56.   In response to Gustavson stating Plaintiff did not like to manage people, Plaintiff stated this was not true and Gustavson must have been in discussion with Bouldin.

57.   Plaintiff met with Gustavson again and was told she would need to transfer into the Sourcing Manager position.  Initially, this position was explained to Plaintiff that she would not lose the management of her direct reports.

58.   Weeks later, Gustavson changed his position and took away Plaintiff's responsibility of her direct reports, and that he was bringing in a male, that he knew, for the Purchasing Manager position held by Plaintiff.

59.   Gustavson then forced Plaintiff to transfer into the position of Sourcing Manager and sign the offer letter for the Sourcing Manager position.  If Plaintiff did not take the Sourcing Manager position there would be no place for her at the company.

60.   Gustavson, in order to further pressure Plaintiff to sign the Sourcing Manager offer letter, picked the offer letter up and walked into Plaintiff's office and placed the letter in Plaintiff's face, telling her to sign it.

61.    Gustavson stated; "Hurry up and sign it!," and that he would hand deliver it to HR. Plaintiff informed Gustavson, that she needed to first review the letter;   Gustafson informed Plaintiff that she needed to immediately sign.

62.    Plaintiff felt extremely pressured to sign the offer letter, which she ultimately did because it was made clear that this was the only position that was open to her.

63.    Plaintiff subsequently had a meeting and explained to Karen Anderson ("Anderson"), Director of HR, her concerns about the transfer; specifically, that Gustavson was forcing her to transfer and that he initially told her she would not lose her direct reports and would continue as manager in the department, and subsequently taking her away her direct reports.

64.    Plaintiff traveled to Omaha with Gustavson at the end of June.  During this business trip, Gustavson made numerous sarcastic comments regarding the removal of Plaintiff's managerial responsibilities.

65.    On July 1, 2014, Plaintiff was unable to further tolerate the lewd, offensive, sexually explicit and offensive, demeaning, hostile work environment that Latricte permitted and thereby encouraged.

66.    On July 15, 2014, Plaintiff was constructively discharged, without completing her two weeks' notice.

67.    On July 7, 2014, Plaintiff had an exit interview with Anderson, the Director of HR.

68.    Plaintiff informed Anderson that she had to resign because she could no longer tolerate the offensive behavior and hostile conduct of Vice President, Bouldin, as aforementioned.

69. Plaintiff informed Anderson that she felt as though Bouldin intentionally retaliated against her for reporting his inappropriate behavior to HR on several occasions, including a formal written harassment complaint, and, despite her complaints, Laticrete took no disciplinary action against Bouldin.

70. Plaintiff also informed Anderson of the pressure she received from Gustafson to transfer into a new position.

<u>**COUNT ONE**</u>
**Violation of Title VII - Hostile Work Environment**

71. Plaintiff incorporates paragraphs 1-70 as though more fully set forth herein at length.

72. Plaintiff, a female employee of Laticrete, is a member of a protected class.

73. Plaintiff has consistently received above average reviews and at all times had been qualified for the positions she held.

74. Plaintiff filed her complaint with the CHRO and EEOC, on or about August 14, 2014 claiming, *inter alia,* sexual harassment and retaliation.

75. The conduct of Bouldin has been lewd, offensive, demeaning, outrageous and directed to Plaintiff's gender and sex, including, but is not limited to:

(a). In April 2013, Bouldin calling Plaintiff a "bitch" and an "asshole."

(b). In June 2013, at the Plant Manager's Meeting, Bouldin showing a slide show which partially contained slides of nude women and making inappropriate sexually derogatory comments about the nude women on the slides such as "Guys, check out these tits!" referring to the women's nude body on the slides.

(c). Bouldin repeatedly stating that he wanted to have a "panty raid," and attempting to enter female bedrooms, causing the Plaintiff to not be able to sleep out of fear and anxiety over Bouldin's comments and actions.

(d). In April 2014, Bouldin, made comments about an "erotic bakery" he liked that baked "penis cakes" and "titty cakes."

(e). Bouldin, as he was discussing the "erotic bakery," looked directly at Plaintiff and said - "[d]oesn't that make you hungry?"

(f). During the April, 2014 staff meeting, Bouldin made another offensive comment and stated, "let's hire the handicap, because they are fun to watch," knowing that Plaintiff has a handicapped nephew.

76.    Bouldin's conduct has repeatedly subjected the Plaintiff to uninvited and lewd sexual and gender based remarks, comments and behavior.

77.    The uninvited, offensive, and lewd remarks and behavior have always been made or condoned by Laticrete's managerial staff and Human Resources, by employees in positions of superior authority within the organizational structure of the company to the Plaintiff.

78.    The conduct had been ongoing for over a year, and had continued despite multiple attempts by Plaintiff to end it by complaining to Laticrete's HR Department and lodging complaints of sexual harassment.

79.    The conduct has continued for over a year and is sufficiently pervasive that the employer either had knowledge or constructive knowledge of the behavior.

80.    The objectionable, uninvited, offensive and lewd remarks, comments and behavior are contrary to Latricete's own policies and procedures.

81.    The objective ongoing, uninvited, continued offensive and lewd behavior had created a hostile work environment such that the Plaintiff has perceived it as hostile.

82.    Defendants' conduct is abusive, lewd, insulting, outrageous, and offensive to a reasonable person and sexually harassing in violation of law.

83.   On July 1, 2014, Plaintiff was unable to further tolerate the lewd, offensive, sexually explicit, and hostile work environment and was forced to resign on July 15, 2014, i.e., she was constructive discharged.

84.   As a result of the foregoing unlawful conduct, the Plaintiff suffered and will continue to suffer damages, including, but not limited to economic damages, emotional and psychological stress, distress, anxiety and the inability to enjoy life's pleasures.

## COUNT TWO
### Violation of Title VII -Sexual Harassment

85.   Plaintiff repeats the allegation set forth in paragraphs 1-70 and 71-84, as though more fully set forth at length.

86.   The pervasive references and sexually harassing comments to women including Plaintiff, was uninvited, lewd, and offensive and allowed by supervisory management is sufficient to constitute discrimination under the "terms conditions and privileges" language of her employment in violation of Title VII of the 1964 Civil Rights Act, as amended.

87.   Plaintiff had attempted to make use of Defendant's HR Department without being able to stop the unwelcome vulgar and obscene sexually harassing behavior either engaged in or condoned by her superiors.

88.   As a result of the foregoing unlawful conduct, the Plaintiff suffered and will continue to suffer damages, including, but not limited, to economic damages and loss of benefits, emotional distress and psychological stress, distress, anxiety and the ability to enjoy life's pleasures.

## COUNT THREE
### Retaliation in violation of Title VII

89.   Plaintiff incorporates paragraphs 1-70, 71-84, and 85-88, as though more fully set forth herein at length.

90.   As a result of Bouldin's lewd, offensive, and sexually inappropriate conduct,  in June, 2013, Plaintiff informed Brunwin, Director of HR, that she was concerned over Bouldin's display of sexually inappropriate and offensive behavior.

91.   In retaliation, after Plaintiff complained to Brunwin about Bouldin's behavior, Bouldin's hostility and offensive behavior increased towards her.

92.   Bouldin then took away Plaintiff's opportunity to obtain the position of Director of Procurement and gave the position to Gustafson.

93.   Plaintiff filed her formal harassment Complaint with HR on or about October 22, 2013 against Bouldin.

94.   A few weeks later, on November 6, 2013, Plaintiff met with Brown, VP of HR, and complained to Brown in regard to Bouldin's sexually inappropriate and offensive conduct, including, but not limited to, calling Plaintiff a  "bitch" and "asshole," on multiple occasions.

95.   Plaintiff also informed HR about Mr. Bouldin's retaliation, in which he first promised Plaintiff she would be promoted into the Director of Procurement position –then after she complained to HR – he took a direction opposite to what he promised and stated he was going to give the Director of Procurement position to any other employee. Bouldin ultimately followed through and gave the position to Gustafson.

96.   Subsequently, Plaintiff had another meeting with Brown.  At the meeting, Brown made excuses for Bouldin's behavior, alluding to the fact that Plaintiff misunderstood

the situation and stated,  "[w]e are all family," clearly implying that because everyone is "family,"  Bouldin's behavior is in some way acceptable.

97.  Following Plaintiff's meeting with Brown, Plaintiff's leadership and development training with Laticrete's organizational psychologist was discontinued, whom Plaintiff had been meeting with in furtherance of fulfilling the Director of Procurement position she had been promised by Bouldin.

98.  After the appalling statements made to Plaintiff about the "erotic cakes" on April 17th Plaintiff sent an email to Brown, which indicated that she wanted to discuss additional concerns regarding her harassment complaint filed against Bouldin on October 22, 2013, and to discuss recent statements  Bouldin made about the "erotic bakery" and handicapped - the meeting never occurred.

99.  In May 2014, Bouldin hired Scott Gustavson ("Gustavson"), for the position Plaintiff had been promised, as the new Director of Procurement, congruent with Bouldin's position that he would hire someone else and not give Plaintiff the position, despite his earlier promises and actions in 2012 that Plaintiff would be provided the position.

100.  In the first weeks of Gustafson's employment (hired by Bouldin), he stated to Plaintiff that she did not like managing people and forced her to sign an offer letter and take a position as Sourcing Manager.   Gustafson further stated that he would hire someone else for Plaintiff's former position.

101.  Plaintiff requested a meeting with Anderson, Director of HR, prior to her interview to explain her concerns about the transfer that Gustavson was pushing her into.

102.   Plaintiff explained to Anderson the comments Gustavson made during her and Gustafson's first meeting, in which he stated that Plaintiff did not like managing people about the pressure to sign an offer letter for the Sourcing Manager position.

103.   Plaintiff was stripped of her managerial responsibilities by Gustavson and was told that he would be fulfilling the Purchasing Manager position with a male.

104.   As a result of the foregoing unlawful conduct and multiple forms of retaliation, such as taking Plaintiff's opportunity away for the Director of Procurement position and increased sexually offensive and inappropriate comments, and causing the Plaintiff's constructive discharge, the Plaintiff suffered and will continue to suffer damages, including, but not limited, to economic damages and loss of benefits, emotional distress and psychological stress, distress, anxiety and the ability to enjoy life's pleasures.

### COUNT FOUR
### Violation of Conn. Gen Stat § 46(a)-60(a)(1) – Hostile Work Environment

105.   Plaintiff incorporates paragraphs 1-70, 71-84, 85-88, and 89-104, as though more fully set forth herein at length.

106.   Plaintiff, a female employee of Laticrete, is a member of a protected class.

107.   Plaintiff has consistently received above average reviews and at all times had been qualified for the positions she held.

108.   The continued lewd remarks and sexually harassing behavior constitutes discrimination in the terms, conditions or privileges of employment because of the Plaintiff's sex pursuant to Conn. Gen. Stat. 46a-60(a)(1).

109.   As a result of the foregoing unlawful conduct, the Plaintiff has suffered damages including but not limited to economic damages, emotional and psychological stress, distress, anxiety and the ability to enjoy life's pleasures.

## COUNT FIVE
### Violation of Conn. Gen. Stat. § 46a-60(a)(4)-Retaliation

110.   Plaintiff incorporates paragraphs 1-70, 71-84, 85-88, 89-104, and 105-109, as though more fully set forth herein at length.

111.   As a result of the foregoing unlawful conduct and multiple forms of retaliation, such as taking Plaintiff's opportunity away for the Director of Procurement position, increased sexually offensive and inappropriate comments, and causing the Plaintiff's constructive discharge, the Plaintiff suffered and will continue to suffer damages, including, but not limited, to economic damages and loss of benefits, emotional distress and psychological stress, distress, anxiety and the ability to enjoy life's pleasures.

112.   Defendants conduct is unlawful and in violation of Conn. Gen. Stat. § 46a-60(a)(4).

113.   As a result of the foregoing unlawful conduct, the Plaintiff suffered and will continue to suffer damages, including but not limited to economic damages and loss of benefits, emotional and psychological stress, distress, anxiety, and the ability to enjoy life's pleasures.

## COUNT  SIX
### Violation of Conn. Gen. Stat. §  46a-60(a)(8)

114.   Plaintiff incorporates paragraphs 1-70, 71-84, 85-88, 89-104, 105-109, and 110-113, as though more fully set forth at length.

115.   Plaintiff, a female employee of Latricete is a member of a protected class.

116.   The pervasive references to women including Plaintiff in uninvited, lewd and offensive terms by or condoned by supervisory management is sufficient to constitute discrimination in violation of Conn. Gen. Stat. § 46a-60(a)(8).

117.   Plaintiff had attempted to make use of Defendant's HR Department without being able to stop the unwelcome vulgar and obscene sexually harassing behavior either engaged in or condoned by her superiors.

118.   As a result of the foregoing unlawful conduct, the Plaintiff suffered and will continue to suffer damages including but not limited to economic damages and loss of benefits, emotional distress and psychological stress, distress, anxiety and the ability to enjoy life's pleasures.

## COUNT SEVEN
### Intentional Infliction of Emotional Distress

119.   Plaintiff hereby incorporates Paragraphs 1-70, 71-84, 85-88, 89-104, 105-109, 110-113, and 114-118, as though more fully set forth herein at length.

120.   Defendant's conduct was extreme and outrageous.

121.   Defendant's conduct was beyond the bounds of decency and is intolerable in the workplace.

122.   The Defendant allowed an environment in its workplace that was permeated with sexually harassing behavior, largely perpetrated by the Defendant's supervisor, James Bouldin.

123.   Despite repeated complaints to Defendant's Managers, Directors, Vice-Presidents, HR, and upper management, Bouldin continued to engage in this outrageous

behavior, as set forth above, without any intervention or remedial action by the Defendant.

124.  The individuals responsible for ensuring that the workplace is free of sexually harassing behavior, pursuant to Defendant's policies and procedures, were the same individuals creating the extreme and outrageous sexually harassing environment.

125.  As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

126.  Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## PRAYER FOR RELIEF

Wherefore the Plaintiff prays that this Court awards:

1.  Money damages and costs;

2.  Punitive damages;

3.  Attorney's fees and expert witness fees;

4.  Prejudgment interest;

5.  That this Court retain jurisdiction over this matter;

6.  Trial by jury;

7.  Such other relief as this Court deems just, fair and equitable.

THE PLAINTIFF,
COLLEEN DOYLE

By: _____

Eugene N. Axelrod, Esq.(ct00309)
Michael C. McMinn, Esq. (ct27169)
Axelrod & Associates, LLC
8 Lunar Drive
Woodbridge, CT 06525
T. 203,389.6526
 F.203.389.2656
 Eaxelrod@axelrodlegal.com